T.C. Memo. 2010-260

UNITED STATES TAX COURT

JASON GOLDITCH, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21865-08L.              Filed November 30, 2010.

Jason Golditch, pro se.

<u>Christina E. Ciu</u>, for respondent.

MEMORANDUM OPINION

MORRISON, <u>Judge</u>:  Under section 6330(d)(1) of the Internal
Revenue Code of 1986, as amended,[1] petitioner Jason Golditch
seeks our review of the determination by the IRS Office of
Appeals to uphold a proposed levy on his assets.  Golditch argues

_____

[1]All subsequent section references are to the Internal
Revenue Code of 1986, as amended (26 U.S.C.).

that the determination was erroneous in two respects.  First, he argues that the Office of Appeals erred in failing to offer him a face-to-face meeting.  Second, he argues that the Office of Appeals erred in refusing to reconsider the amount of his tax liabilities.  We sustain the determination of the Office of Appeals.  We also decide that the levy should not be suspended during the judicial appeal of the determination.

Background

The proposed levy is intended to collect unpaid income-tax liabilities for 2002, 2003, 2004, and 2005.  Golditch failed to file federal income-tax returns for the years 2001, 2002, 2003, 2004, and 2005.  On November 30, 2006, the IRS sent a notice of deficiency to Golditch determining that he was liable for income taxes for the 2002, 2003, 2004, and 2005 years.  The deficiency notice was sent to Golditch's address on White Road in Watsonville, California.  Golditch received the notice.  See infra Discussion, part 3.  Golditch did not file a petition in the Tax Court to contest his tax liabilities for the years 2002 through 2005.

On July 31, 2007, the IRS sent Golditch a "Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC § 6320", notifiying him that it had filed a tax lien to secure his tax

liabilities for the tax years 2001 to 2005.[2]  Golditch timely requested an administrative hearing regarding the filing of the lien.  Believing that Golditch's request for the lien hearing was late, the IRS did not hold a lien hearing under section 6320 (guaranteeing each taxpayer a right to an administrative hearing after the filing of a tax lien).  Instead, it held an equivalent hearing.

On January 19, 2008, the IRS sent Golditch a "Final Notice of Intent to Levy and Notice of Your Right to a Hearing" notifying him that it intended to levy to collect his assessed tax debts for the 2002, 2003, 2004, and 2005 tax years.  Golditch timely requested an administrative hearing regarding the proposed levy.  In this request, dated February 13, 2008, Golditch asserted that he wished to verify that the IRS had followed proper procedures; that he did not believe he was liable for the tax; that he wished to challenge the tax liabilities because he had not yet had a chance to do so; and that if it could be proven that he owed the tax, he wished to discuss collection alternatives.  His request also said:  "It is not my intention to discuss any issues that the IRS or the Courts has considered to be frivolous.  If you have considered any of my prior issues that I've raised in the past to be frivolous, I hereby abandon them."

---

[2]The record does not contain information relating to the issuance of a notice of deficiency for 2001.

The IRS Office of Appeals assigned Golditch's request for a pre-levy hearing to Settlement Officer Phillips. On June 2, 2008, Phillips sent a letter to Golditch informing him that a telephone conference had been scheduled for July 1, 2008, at 10:30 a.m. The letter stated that this telephone call would be Golditch's primary opportunity to discuss the reasons he disagreed with the levy and to discuss alternatives. The letter advised Golditch that the issues he raised in his request for a pre-levy hearing were frivolous. The letter also stated:

> You will be allowed a face-to-face conference on any non-frivolous issue; however you will need to provide the non-frivolous issue in writing or by calling me within 14 days from the date of this letter before a face-to-face conference will be scheduled. You must be in full compliance with your filing requirements.

The letter also stated that for Phillips to consider alternatives to the levy such as an installment agreement or an offer-in-compromise, Golditch needed to file all federal tax returns that he had not yet filed and complete a collection information statement. On July 1, 2008, Phillips sent a letter to Golditch informing him that she had called him at the scheduled conference time of 10:30 a.m. that day but was unable to reach him. Golditch never provided a collection information statement. Nor did he file a tax return for 2001, 2002, 2003, 2004, or 2005.

On July 28, 2008, the IRS Office of Appeals issued a decision letter regarding the equivalent hearing that it had

offered to Golditch after the lien was filed.  It sustained the lien filing.

On July 28, 2008, the IRS Office of Appeals determined that it was appropriate to collect the income-tax liabilities for 2002, 2003, 2004, and 2005 by levy.  The determination contained this statement:

> The taxpayer does not want to be considered a "taxpayer" and feels he has no responsibility to file income tax returns or to pay taxes.  The taxpayer does have a responsibility to file income tax returns and pay tax.  Furthermore he may not raise the underlying tax as an issue in this Collection Due Process hearing because he was issued and received a Statutory Notice of Deficiency, which provided him with prior opportunity to dispute the tax.

Golditch challenged the determination by filing a Tax Court petition.  At the time that he filed the petition, Golditch lived in California.

At some point, the IRS Office of Appeals realized that Golditch's request for a lien hearing was timely.  It decided to conduct a regular section 6320 hearing.  Such a hearing had not yet taken place as of October 21, 2009, the trial date in the Tax Court case.

Before trial, the respondent (whom we refer to here as the IRS) moved to show cause why its proposed stipulation of facts should not be accepted as established for the purposes of the case.  The proposed stipulation of facts, which was attached as Exhibit A of the motion, contained 36 paragraphs and referred to

29 exhibits.  The preamble to the proposed stipulation of facts contained a proviso that "either party has the right to object to the admission of any such facts and exhibits in evidence on the grounds of relevancy and materiality."  On September 11, 2009, the Court ordered Golditch to show cause by October 1, 2009, why the proposed stipulation of facts should not be accepted as established for purposes of the case.

On October 5, 2009, the IRS moved to permit levy under section 6330(e)(2).

On October 19, 2009, Golditch submitted a motion for leave to file a late response to the order to show cause dated September 11, 2009.  He also lodged his response to the order to show cause.  The Court denied the motion.  It ordered that the proposed stipulation of facts be accepted as established for the purposes of this case.[3]  Of the 29 exhibits that were attached to the proposed stipulation of facts, the Court admitted 13 of the exhibits into evidence.  Golditch made relevancy objections to the remaining 16 exhibits:  1-J, 5-J, 7-R, 8-R, 9-R, 10-R, 11-R,

---

[3]The order referred to the proposed stipulation of facts that was attached as Exhibit A to the IRS's motion to show cause why its proposed stipulation of facts should not be accepted as established for the purposes of the case.  At trial, the IRS lodged a slightly different document with the Court.  The unsigned document was another draft stipulation of facts which the IRS had unsuccessfully asked Golditch to execute.  It contained 35 paragraphs and referenced 28 exhibits.  It is not signed, and it is not a document reflecting facts deemed established by Court order.  It therefore has no legal effect.

14-R, 15-R, 16-R, 17-R, 18-R, 19-R, 23-R, 25-J, and 27-J. (Golditch was permitted to make relevancy objections to the exhibits that were attached to the proposed stipulation, even though the proposed stipulation was deemed established, because the proposed stipulation expressly reserved each party's right to make relevancy objections to the exhibits.)  At trial, Golditch declined to testify or introduce any documentary evidence.

Discussion

1.  Evidentiary Issues.

Golditch's objections to the 16 exhibits are of two types. First, he claims that some exhibits were not part of the administrative record because they were not created by the hearing officer.  We overrule this objection.  A document need not be created by the hearing officer to be part of the administrative record.  Second, Golditch objects to some of the exhibits on the grounds that they are related to the lien proceeding.  He argues that the lien hearing is irrelevant to the levy hearing.  We overrule this objection.  The lien hearing is relevant to Golditch's argument, discussed below, that we should delay the decision in this case because of the lien hearing.  The 16 exhibits are admissible.

2.  The IRS Office of Appeals Did Not Err in Refusing To Meet With Golditch.

Although section 6330(b)(1) requires the IRS Office of Appeals to hold a pre-levy "hearing" if one is requested by the

taxpayer, the statute does not explain whether the hearing must include a face-to-face meeting with the taxpayer.  See Katz v. Commissioner, 115 T.C. 329, 335 (2000) (holding that a similar provision, section 6320(b), does not address the issue of whether the hearing must be face-to-face).  Guidance is found in section 301.6330-1(d)(2), Q&A-D7, Proced. & Admin. Regs., which provides:

> Except as provided in A-D8 of this paragraph (d)(2), a taxpayer who presents in the CDP hearing request relevant, non-frivolous reasons for disagreement with the proposed levy will ordinarily be offered an opportunity for a face-to-face conference at the Appeals office closest to taxpayer's residence. * * *

Also, section 301.6330-1(d)(2), Q&A-D8, Proced. & Admin. Regs., provides:

> A face-to-face CDP conference concerning a taxpayer's underlying liability will not be granted if the request for a hearing or other taxpayer communication indicates that the taxpayer wishes only to raise irrelevant or frivolous issues concerning that liability.  A face-to-face CDP conference concerning a collection alternative, such as an installment agreement or an offer to compromise liability, will not be granted unless other taxpayers would be eligible for the alternative under similar circumstances.  For example, because the IRS does not consider offers to compromise from taxpayers who have not filed required returns or have not made certain required deposits of tax, as set forth in Form 656, "Offer in Compromise," no face-to-face conference will be granted to a taxpayer who wishes to make an offer to compromise but has not fulfilled those obligations.  * * *  In all cases, a taxpayer will be given an opportunity to demonstrate eligibility for a collection alternative and to become eligible for a collection alternative, in order to obtain a face-to-face conference. * * *

In summary, the regulation states a general rule that a face-to-face meeting is ordinarily offered if the taxpayer's request for a hearing contains relevant, nonfrivolous reasons for the hearing. Two exceptions to the general rule are expressed. First, no face-to-face meeting will be provided to determine the amount of the tax liability if communications with the taxpayer (including but not limited to the hearing request) show that the taxpayer wishes to raise only issues that are irrelevant or frivolous. Second, no face-to-face meeting will be provided to consider a collection alternative for which the taxpayer does not qualify.

The starting point for applying the regulation is the text of the request for a hearing. In his request, Golditch expressed a desire for three things: (1) to make sure the IRS had met all procedural requirements, (2) to contest his tax liabilities, and (3) to discuss alternative collection methods. All of these matters are within the scope of the statutorily prescribed subject matter for the hearing. Sec. 6330(c). However, as we explain below, none of the three matters required a face-to-face meeting.

a.  Golditch's Request That IRS Office of Appeals Perform
    Mandatory Verification of Legal Requirements Did Not
    Require a Face-to-Face Meeting.

Golditch requested the pre-levy hearing, in part, to verify that the IRS had complied with all procedures.  Section 6330(c)(1) provides that "The appeals officer shall at the hearing obtain verification from the Secretary that the requirements of any applicable law or administrative procedure have been met."  This verification is mandatory.  Unlike the requirement that the Office of Appeals consider certain issues raised by the taxpayer (a requirement contained in section 6330(c)(3)(B)), the verification requirement of section 6330(c)(1) does not depend on which issues are presented by the taxpayer.  See, e.g., Hoyle v. Commissioner, 131 T.C. 197, 202-03 (2008) (holding that, because verification is mandatory, "this Court will review the Appeals officer's verification under section 6330(c)(1) without regard to whether the taxpayer raised it at the Appeals hearing").  Thus, a face-to-face meeting with the taxpayer is not necessary for the Office of Appeals to obtain verification that the IRS has met the legal and procedural requirements.  Section 6330(b)(1) does not require a face-to-face meeting merely to obtain the verification.

b.  Golditch's Request To Contest the Amount of His Tax Liabilities Did Not Require a Face-to-Face Meeting.

The second reason that Golditch requested the hearing was to contest his tax liabilities.  We find it more likely than not that Golditch's communications with Phillips indicated that his challenge to his tax liabilities, including his challenge to penalties, was based on frivolous arguments.  We base this finding on the June 2, 2008, letter from Phillips, in which Phillips explained that Golditch's position was that he did not "want to be considered a 'taxpayer' and feels he has no responsibility to file income tax returns or to pay taxes."[4] (Although Golditch's request for a hearing dated February 13, 2008 purported to abandon any frivolous arguments, this blanket disavowal does not cancel out the effect of prior frivolous communications because there is no evidence that Golditch asserted any nonfrivolous arguments.)  Phillips did not err in refusing a face-to-face meeting to discuss the amounts of Golditch's tax liabilities.  Phillips was merely following

---

[4]Two other pieces of evidence relate to the frivolous nature of Golditch's communications with the IRS.  First, Golditch failed to respond to Phillips' request that he submit nonfrivolous issues to her within 14 days in order to qualify for a face-to-face hearing.  Second, Golditch wrote a letter to the IRS in 2005 claiming that, as a U.S. citizen, he was exempt from the federal income tax.  Even without considering these two pieces of evidence, we are satisfied that Golditch's communications with the IRS demonstrated that he wished only to raise irrelevant or frivolous issues regarding his tax liabilities.

section 301.6330-1(d)(2), Q&A-D8, Proced. & Admin. Regs., which provides that "A face-to-face CDP conference concerning a taxpayer's underlying liability will not be granted if the request for a hearing or other taxpayer communication indicates that the taxpayer wishes only to raise irrelevant or frivolous issues concerning that liability."

    c.    <u>Golditch's Request for Collection Alternatives Did Not Require a Face-to-Face Meeting</u>.

The third reason Golditch requested the hearing was to discuss collection alternatives. But Golditch failed to show that he met the requirements for being considered for collection alternatives. First, he did not submit a collection information form. Second, he failed to file his tax returns. Under the regulation, Golditch was not entitled to a face-to-face hearing regarding collection alternatives. See <u>id.</u>

3.    <u>The Office of Appeals Did Not Err in Declining to Redetermine Golditch's Tax Liabilities</u>.

A taxpayer may contest the underlying tax liability at a pre-levy hearing, but only if the taxpayer "did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability." Sec. 6330(c)(2)(B). Golditch claimed in his brief that he did not receive the statutory notice of deficiency, but he declined to testify at trial. The trial record establishes that Golditch received the statutory notice of deficiency. A certified mail

list, with an official U.S. Post Office stamp, showed that the statutory notice of deficiency was given by the IRS to the U.S. Postal Service.  The address to which the IRS directed the notice was the same address used by the IRS for all correspondence to Golditch related to the notice of intent to levy, the notice of federal tax lien, and other notices.  The IRS had verified Golditch's address in various telephone conversations with him from 2004 through 2008.  The IRS had no record that Golditch had notified the IRS of a change of address.  Golditch did not present any evidence, in the form of either documents or testimony, that he did not receive the statutory notice of deficiency.  The preponderance of the evidence shows that Golditch received the statutory notice of deficiency.  See Sego v. Commissioner, 114 T.C. 604, 611 (2000) (applying preponderance-of-the-evidence standard).  Golditch was therefore not entitled to raise the issue of the amounts of his tax liabilities before the Office of Appeals.  The Office of Appeals did not err in declining to consider the amounts of Golditch's tax liabilities.

4.    The Decision in This Case Should Not Be Delayed.

Golditch argues on brief that the Court should delay the issuance of a decision in this case because of the lien hearing. Golditch believes that if this Court sustains the determination of the Office of Appeals with respect to the levy, he will be

unable to appeal the determination of the Office of Appeals with respect to the lien. Golditch misconstrues section 6330(b)(2), which provides that "A person shall be entitled to only one hearing under this section with respect to the taxable period". The phrase "one hearing under this section" refers to a hearing under section 6330, meaning a pre-levy hearing. Thus, section 6330(b)(2) bars a taxpayer from having a hearing each time the taxpayer faces the prospect of a new levy for the same taxable period. It does not prevent a taxpayer from having one hearing to discuss a prospective levy and a second hearing to discuss a lien filing.[5]

5.  The Levy Should Not Be Suspended During Golditch's Judicial Appeal of the Pre-Levy Determination of the IRS Office of Appeals.

A taxpayer's request for a pre-levy hearing automatically suspends the levy process. Sec. 6330(e)(1). The suspension ordinarily continues during the judicial appeal of the pre-levy determination of the Office of Appeals. However, the suspension does not apply while a judicial appeal is pending if (1) a court determines that the IRS has shown good cause why the levy should not be suspended, and (2) the underlying tax liability is not at issue in the appeal. Sec. 6330(e)(2). We find that the IRS has shown good cause that the levy should not be suspended. We

---

[5]Sec. 6320(b)(4) provides that the lien hearing will be held in conjunction with the levy hearing "To the extent practicable" only.

believe that Golditch used the pre-levy appeal process to delay the IRS's collection efforts, not to raise legitimate issues. Golditch's underlying tax liabilities are not at issue in the appeal, as we explained <u>supra</u> part 3.  The IRS's motion to permit levy will be granted.

　　To reflect this opinion,

<u>An appropriate order and decision will be entered</u>.